J-S04037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                          :        PENNSYLVANIA
                                          :

           v.                          :

BERNIE BROWN                      :
                                          :
          Appellant             :     No. 1526 EDA 2024

Appeal from the PCRA Order Entered September 29, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0014866-2008

BEFORE:  OLSON, J., STABILE, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED FEBRUARY 18, 2025**

Bernie Brown appeals *nunc pro tunc* from the dismissal of his serial petition filed pursuant to the Post Conviction Relief Act ("PCRA"). **_See_** 42 Pa.C.S. §§ 9541-9546. Brown chiefly contends that newly-discovered evidence, purportedly demonstrating Philadelphia Police Officer Ryan Pownall's work-related transgressions, casts doubt on the verdicts reached in his own case. We conclude that Brown has failed to demonstrate any basis for relief and accordingly affirm.

As summarized in this Court's disposition of his second PCRA petition:

On August 3, 2008[, Brown] and his neighbor, Shakeya Green, had a dispute over an illegally parked car in front of 1255 Adams Avenue in Philadelphia. [] Green, who lived with her boyfriend, Christopher Lancaster, and their two children, had noticed that a car was parked in the middle of Adams Avenue and was thus blocking incoming and outgoing traffic. [] Green knocked on [Brown's door; Green] had never met [Brown]. [Brown] and his girlfriend, to whom the car belonged, answered the door, and the

---

*Retired Senior Judge assigned to the Superior Court.

three got into an argument. [] Green then called [] Lancaster, who came over and "had words" with [Brown].

Two days later, on August 5, 2008, [] Lancaster was sitting in his Jeep in front of his apartment at 1255 Adams Avenue. [] Lancaster was talking to his uncle, who lived across the street, when [Brown] approached him. [Brown] asked [] Lancaster if he wanted to talk about the argument they had two days before. [] Lancaster waved him away and turned his back to [Brown]. As soon as he turned around, [Brown] shot [] Lancaster in the back. The gunshot spun him around so that he was facing [Brown]. As [Brown] kept shooting, [] Lancaster attempted to crawl under his Jeep. This led [Brown] to continue to shoot at [] Lancaster under the Jeep. [] Lancaster screamed to [Brown], "You already shot me, what else do you want to do, kill me now?" This failed to deter [Brown], who continued to shoot, ultimately hitting [Lancaster] eight times. [Brown] then fled the scene in a black car. [] Lancaster's uncle tried to help him into his apartment and then called the police.

At the time of the shooting, [] Green had been sleeping in the apartment she shared with [] Lancaster. She was awakened by gunshots, looked out the bedroom window and saw [Brown] fire the last two shots at [] Lancaster. [Green] ran downstairs to the kitchen window, where she saw [Brown] leave in a black car. [] Green then called the police.

[] Lancaster was transported to Temple University Hospital, where he remained for [2½] weeks. [Lancaster] had been shot in the back, thigh, knee, chin, armpit, and arm. Before he was brought into surgery, detectives showed [] Lancaster a photograph of [Brown], and [] Lancaster identified [Brown] as the shooter. Two days later, police returned to the hospital to interview [] Lancaster, and he again identified [Brown] as the shooter. [Brown] was apprehended and arrested for the crime by the Warrant Unit approximately two months later.

***Commonwealth v. Brown***, 2018 WL 2408427, at *1 (Pa. Super., filed May 29, 2018) (unpublished memorandum) (834 EDA 2017) (brackets in original).

Ultimately, a jury found Brown guilty of attempted murder, aggravated assault, possession of a firearm by a prohibited person, carrying a firearm

- 2 -

without a license, and possessing an instrument of crime.[1] The court sentenced Brown to an aggregate term of twenty-four-to-forty-eight years' incarceration. Although Brown did not timely file a post-sentence motion or appeal, Brown sought, and was granted, PCRA relief in the form of reinstatement of his appellate rights *nunc pro tunc*, ultimately resulting in this Court's affirmance of his judgment of sentence on August 14, 2012. ***See Commonwealth v. Brown***, 60 A.3d 569 (Pa. Super. 2012) (table) (3015 EDA 2011).

In the ensuing years, Brown filed two additional, albeit unsuccessful, PCRA petitions. On April 18, 2023, Brown filed, *pro se*, the instant PCRA petition, his third since our resolution of his direct appeal *nunc pro tunc*. Although the PCRA court initially dismissed this petition, following Brown's subsequent motion,[2] it "ordered an evidentiary hearing and appointed [counsel] to represent [him]. On May 31, 2024, . . . the [PCRA] [c]ourt reinstated [Brown's] right to appeal from the [original] order dismissing his [putative third] [p]etition." PCRA Court Opinion, 8/14/24, at 3.[3]

On appeal, Brown presents one question for review:

---

[1] 18 Pa.C.S §§ 901/2502, 2702(a)(1), 6105(a)(1), 6106(a)(1), 907(a), respectively.

[2] The court ostensibly construed Brown's motion as a subsequent PCRA petition.

[3] Appointed counsel continues to represent Brown in this appeal.

Did the PCRA court err and was dismissal of his third PCRA petition without a hearing not supported by the record and free from legal error because he received newly-discovered evidence in relation to Philadelphia Police Officer Ryan Pownall and his pattern and practice of misconduct that was not disclosed to him at the time of trial, when Officer Pownall was a responder and responsible for the preservation of evidence, when Officer William Smith was untruthful and did not disclose Officer Pownall's involvement in his case, and when new evidence in relation to Officer Pownall would warrant a new trial for him because the failure to previously disclose prejudiced him and new evidence casts doubt on the verdicts because of police officer misconduct and untruthfulness that can only be assessed at an evidentiary hearing?

*See* Appellant's Brief, at 4.

This Court's review of an appeal following the denial of PCRA relief requires consideration of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Montalvo*, 114 A.3d 401, 409 (Pa. 2015) (citation and internal quotation marks omitted). To seek review under the PCRA, a petitioner must satisfy its jurisdictional timeliness requirements. *See Commonwealth v. Zeigler*, 148 A.3d 849, 853 (Pa. Super. 2016). Specifically, a petitioner must file his PCRA petition within one year of the date a judgment of sentence becomes final or plead and prove, within the body of the petition, the applicability of one of the three statutory exceptions to the timeliness requirement. *See Commonwealth v. Bennett*, 930 A.2d 1264, 1267 (Pa. 2007); 42 Pa.C.S. § 9545(b)(1).

As he did not file a petition for allowance of appeal with our Supreme Court, Brown's judgment of sentence became final on September 13, 2012, thirty days after this Court affirmed his judgment of sentence. *See* 42 Pa.C.S.

§ 9545(b)(3) (establishing that judgment of sentence becomes final at conclusion of direct review or expiration of time for seeking review); Pa.R.A.P. 1113(a) (directing that "a petition for allowance of appeal shall be filed with the Prothonotary of the Supreme Court within 30 days of the entry of the order of the Superior Court sought to be reviewed"). Brown's petition, filed on April 18, 2023, is, therefore, untimely by almost a decade and reliant on proof of an applicable PCRA time-bar exception.

The court found that Brown "satisfied the newly-discovered facts exception to the PCRA's jurisdictional time-bar[,]" PCRA Court Opinion, 8/14/24, at 7, and proceeded to review the substantive merits of his **Brady**/after-discovered evidence claim. The court summarized its rationale for this determination:

> [Brown] states that, on July 25, 2022, the Philadelphia District Attorney's Office sent him a police misconduct disclosure regarding Officer Ryan Pownall. [Brown] states that he was unaware of Officer Pownall's misconduct and could not have discovered it through the exercise of due diligence. [Brown] filed his petition on April 18, 2023, within one year of the Commonwealth's disclosure.

**Id**. (citations omitted).

To satisfy the newly-discovered facts exception, a petitioner must plead and prove that "the facts upon which [his] claim is predicated were unknown to [him] and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S. § 9545(b)(1)(ii); **see also id**. at § 9545(b)(2) (requiring petitioner to invoke exception "within one year of the date the claim could have been presented[]").

- 5 -

Brown appended to his petition a letter that he received from the Philadelphia District Attorney's Office ("DAO Letter"), dated July 25, 2022. *See* Third PCRA Petition, 4/18/23, DAO Letter. We observe that the DAO Letter contains: (1) a "Philadelphia Police Department Misconduct Disclosure" form indicating that, as of November 21, 2018, Officer Pownall had "separated" from the Police Department, but was found "Not Guilty" in February 2014 by the "Board" for "Unauthorized and/or excessive use of force"; (2) an undated report from the "Internal Affairs Division" by a "Staff Inspector," sustaining an allegation of "Physical Abuse"; (3) a news article from 2017 indicating that Officer Pownall was then suspended and would be fired from the Police Department due to fatally shooting a man running away from a traffic stop with further references to a 2010 Officer Pownall shooting, which culminated in a 2013 civil trial wherein a federal jury found that the officer was justified in discharging his firearm; and (4) a Philadelphia Police Department Investigation Report ("Investigation Report"), dated October 4, 2008, establishing that Officer Pownall "assisted" Brown's responding officer, Officer William Smith, when responding to Lancaster's shooting. *See id*.

We agree that Brown's submission satisfies the newly-discovered facts exception to the PCRA's time-bar. Brown filed his petition within one year of receiving the DAO Letter, and he could not have discovered its contents, utilized in support of his underlying claims, through the exercise of due diligence. As such, the PCRA court properly concluded that it had jurisdiction to consider the merits of Brown's substantive claims.

In his petition, Brown dually raises a claim pursuant to ***Brady v. Maryland***, 373 U.S. 83 (1963), and one that asserts the existence of after-discovered evidence. ***See*** Amended Third PCRA Petition, 5/12/23, at ¶¶ 7-10, 16.

To establish a ***Brady*** violation, Brown must show that "(1) evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence was favorable to the defendant, either because it was exculpatory or because it could have been used for impeachment; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant." ***Commonwealth v. Willis***. 46 A.3d 648, 656 (Pa. 2012). "The withheld evidence must have been in the exclusive control of the prosecution at the time of trial." ***Commonwealth v. Haskins***, 60 A.3d 538, 547 (Pa. Super. 2012). However, "[n]o ***Brady*** violation occurs when the defendant knew, or with reasonable diligence, could have discovered the evidence in question." ***Id***. (citing ***Commonwealth v. Paddy***, 15 A.3d 431, 451 (Pa. 2011)).

Brown suggests that: (1) at his trial, Officer Smith lied about Officer Pownall's involvement in his case; and (2) Officer Pownall is, for lack of a better phrase, a "dirty cop" who, given his "repeated" transgressions involving the excessive use of force, must have negatively impacted Brown's trial proceedings. ***See*** Appellant's Brief, at 17-19.

Although Officer Smith testified that he was not working with a partner when he responded to Lancaster's shooting, ***see*** N.T., 10/27/09, at 56-57, we find that the information contained in the Investigation Report, demonstrating

that Officer Pownall assisted Officer Smith on that date, was available to Brown in advance of his trial. Therefore, Brown fully possessed the ability to discover evidence of Officer Pownall's involvement, and this component of the DAO Letter cannot serve as the basis for a meritorious **Brady** claim. **See Paddy**, **supra**.

As to Officer Pownall's alleged status as a "dirty cop" necessitating some sort of evidentiary disclosure from the Commonwealth, *all* the discrete pieces of information contained in the DAO Letter occurred *years* after Brown's trial and direct appeal.[4] Accordingly, the facts contained within the DAO Letter could not be relevant for a determination on a **Brady** violation in connection with Brown's case. **See District Attorney's Office for Third Judicial Dist. v. Osbourne**, 557 U.S. 52, 68-69 (2009) (**Brady** obligations do not extend to post-conviction proceedings; holding that the Ninth Circuit "went too far" in applying **Brady** to post-conviction proceedings; noting, "Osbourne's right to due process is not parallel to a trial right, but rather must be analyzed in light of the fact that he has already been found guilty at a fair trial, and has only a limited interest in post[-]conviction relief. **Brady** is the wrong framework[]").

---

[4] While Brown contends that "Officer Pownall's misconduct date[s] back to at least 2010 when [Brown] was undergoing post-trial procedures[,]" Appellant's Brief, at 17, the only basis for support of that date is the 2017 news article indicating that he was "involved" in a 2010 shooting, but was found, by a preponderance of evidence, to be "justified in opening fire[,]" by a federal jury in a subsequent 2013 civil trial. Third PCRA Petition, 4/18/23, DAO Letter, News Article.

Most importantly, however, other than resorting to speculation, Brown has failed to show any nexus between the contents of the DAO Letter and the facts underpinning his own case. Moreover, Brown's petition does not argue, nor even suggest, that Officer Pownall utilized *any* excessive force against him. Thus, because Brown has failed to show the existence of any withheld "evidence" by the Commonwealth, his **Brady** contention necessarily fails.

As for a claim of after-discovered evidence, Brown must demonstrate: "(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict." **Commonwealth v. Washington**, 927 A.2d 586, 595-96 (Pa. 2007).

To the extent Brown is suggesting that he could use information about Officer Pownall (who did not testify at his trial) to challenge the trial testimony of Officer Smith, we find that this challenge is meant solely to impeach Officer Smith's credibility. Therefore, the information about Officer Pownall cannot constitute after-discovered evidence. Furthermore, as to Officer Pownall's alleged transgressions, all of which, as previously indicated, occurred after Brown's trial, there is no concrete explanation as to how this information would likely have resulted in a different verdict.

Beyond generalized insinuations, Brown has not made any specific assertion that puts into question *the facts of his own case*. Brown offers no basis for finding bad character or prior bad acts evidence concerning Officer

Pownall to be admissible in relation to his substantive claim. As noted by the PCRA court: "[e]vidence of Officer Pownall's misconduct in unrelated cases would not be admissible at [Brown's] trial." PCRA Court Opinion, 8/14/24, at 8. Presenting wholly unrelated "bad acts" in an attempt to impugn the character of Officer Pownall does not, *ipso facto*, show that there has been misconduct in his own case.

We again note that Brown does not claim that Officer Pownall utilized excessive force against him, which is the only discernable basis for misconduct contained within the DAO Letter. In the absence of a causal link between Officer Pownall's actions and Brown's case, the DAO Letter cannot serve as after-discovered evidence, as there is no possibility that its contents could have resulted in a different verdict. ***See, e.g.***, ***Commonwealth v. Foreman***, 55 A.3d 532, 537-38 (Pa. Super. 2012) (rejecting an after-discovered evidence claim by finding, *inter alia*, that the appellant "failed to show any nexus between his case and [police officer's] alleged misconduct in an incident, which occurred more than two years after [a]ppellant's conviction[]").

As Brown is not entitled to relief on either basis that he has advanced, the PCRA court properly denied relief. We therefore affirm the order dismissing Brown's PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>2/18/2025</u>